Mark S. Northcraft, Esq. ISBN 9892
Aaron D. Bigby, Esq. ISBN 10172
NORTHCRAFT, BIGBY & BIGGS, P.C.
819 Virginia Street, Suite C-2
Seattle, WA  98101
Telephone:  (206) 623-0229
Facsimile:  (206) 623-0234
Emails:  marks_northcraft@northcraft.com
         aaron_bigby@northcraft.com

Hunter J. Shkolnik, Esq. (NY SBN 2031458; *pro hac vice anticipated)*
Brett S. Bustamante, Esq. (NY SBN 5239703; *pro hac vice anticipated*)
NAPOLI SHKOLNIK PLLC
360 Lexington Avenue, 11th Floor
New York, NY 10017
Telephone:  (212) 397-1000
Facsimile:  (646) 843-7603
Emails:  hunter@napolilaw.com
         bbustamante@napolilaw.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO, SOUTHERN DIVISION

| | |
|---|---|
| MARY WILKES SHORT, LEONARD SHORT, LEVI WILKES, AMY WEILOCH, LESLIE WEILER, MEGAN WILKES, SHANNON WILKES, ANNA RUTH TRENTADUE, INDIVIDUALLY, F.C.C., A MINOR and J.P.C., A MINOR, BY AND THROUGH THEIR NATURAL GUARDIAN AND MOTHER, ANNA RUTH TRENTADUE, ERICA D. LINNELL, ARTHUR THOMAS LINNELL, SHERI LYNNE LINNELL, AND MOLLY TYSON, <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES OF AMERICA, <br><br> Defendant. | No. <br><br> **COMPLAINT FOR DAMAGES UNDER THE FEDERAL TORT CLAIMS ACT** |

Plaintiffs, Mary Wilkes Short, Leonard Short, Levi Wilkes, Amy Weiloch, Leslie Weiler, Megan Wilkes, Shannon Wilkes, Anna Ruth Trentadue, individually, F.C.C., a minor, and J.P.C., a minor, by and through their natural guardian and mother, Anna Ruth Trentadue, Erica D. Linnell, Arthur Thomas Linnell, Sheri Lynne Linnell, and Molly Tyson ("Plaintiffs"), by and through counsel, for their Complaint against Defendant, United States of America ("Defendant" or "USA"), allege as follows:

## INTRODUCTION

1.     On April 10, 2015, pilot John H. Short and three passengers, Russell Taylor Cheney, Aaron J. Linnell, and Andrew David Tyson, sustained fatal injuries when Mr. Short's Cessna T210M aircraft, US Registration Number N732YQ (the "subject aircraft"), collided with a dead tree – a hazard to aviation – shortly after takeoff from Defendant-owned and operated Upper Loon Creek USFS Airport, located in the Salmon-Challis National Forest near Challis, Idaho (the "subject crash").  John H. Short, Russell Taylor Cheney, Aaron J. Linnell, and Andrew David Tyson died as a result of the tortious conduct of the United States Forest Service set forth herein, leaving behind four widows, seven children, two parents, and a brother who now bring this wrongful death lawsuit as heirs pursuant to Idaho Code § 5-311.

## PARTIES

2.     Plaintiff Mary Wilkes Short is an individual over the age of majority, widow and heir of John Short, and resident of the State of Florida.

3.     Plaintiff Leonard Short is an individual over the age of majority, son and heir of John Short, and resident of the State of Colorado.

4.     Plaintiff Leslie Weiler is an individual over the age of majority, daughter and heir of John Short, and resident of the State of Utah.

5.      Plaintiff Levi Wilkes is an individual over the age of majority, stepson and heir of John Short, and resident of the State of Florida.

6.      Plaintiff Amy Weiloch is an individual over the age of majority, stepdaughter and heir of John Short, and resident of the State of Utah.

7.      Plaintiff Megan Wilkes is an individual over the age of majority, stepdaughter and heir of John Short, and resident of Ireland.

8.      Plaintiff Shannon Wilkes is an individual over the age of majority, stepdaughter and heir of John Short, and resident of the State of Utah.

9.      Plaintiff Anna Ruth Trentadue is an individual over the age of majority, surviving spouse and heir of Russell Taylor Cheney, a resident of the State of Idaho, and the natural guardian and mother of F.C.C. and J.P.C.

10.     Plaintiffs F.C.C. and J.P.C. are the surviving minor children and heirs of Russell Taylor Cheney and Anna Ruth Trentadue and residents of the State of Idaho.

11.     Plaintiff Erica D. Linnell is an individual over the age of majority, surviving spouse and heir of Aaron J. Linnell, and a resident of the State of Idaho.

12.     Plaintiff Arthur Thomas Linnell is an individual over the age of majority, surviving natural father of Aaron J. Linnell, and a resident of the State of Colorado.

13.     Plaintiff Sheri Lynne Linnell is an individual over the age of majority, surviving natural mother of Aaron J. Linnell, and a resident of the State of Colorado.

14.     Plaintiff Molly Tyson is an individual over the age of majority, the surviving spouse and heir of Andrew David Tyson, and a resident of the State of Idaho.

15.     Defendant United States of America, by and through the US Forest Service, US Department of Agriculture, at all relevant times, owned and operated Upper Loon Creek USFS Airport, Airport Identifier U72 (the "subject airport" or "U72").

## JURISDICTION AND VENUE

16.     Jurisdiction is proper pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346 *et seq.* and federal question jurisdiction under 28 U.S.C. § 1331.

17.     Plaintiffs have exhausted their respective claims by filing the required forms with Defendant over six months ago. *See* Exhibit A (Administrative Notices of Claim).

18.     Venue is proper before this Court pursuant to 28 U.S.C. §1391(b)(1), in that the District of Idaho, Southern Division is a judicial district in which the Defendant resides.

## FACTUAL ALLEGATIONS

19.     On April 10, 2015, pilot John Short and his three passengers, Russell Cheney, Aaron Linnell, and Andrew Tyson, sustained fatal injuries when the subject aircraft collided with a dead tree (the "subject flight") – a hazard to aviation located on Defendant's property (the "subject hazard") – shortly after takeoff from the subject airport.

20.     The subject flight was conducted for a business, not a recreational, purpose.

21.     At all relevant times, the subject airport, including but not limited to the property on which the subject hazard was located, was owned and operated by Defendant.

22.     At all relevant times, the subject airport was part of the National Airspace System, with Federal Aviation Administration alphanumeric identifier U72.

23.     At all relevant times, air taxi for hire operators and private pilots utilized the subject airport, just as is the case with virtually every non-military airport that is part of the National Airspace System.

24.     Defendant, at all relevant times the owner and operator of the subject airport, is required to comply with federal regulations applicable to this airport, including but not limited to 14 CFR Part 77, Subpart C – Standards for Determining Obstructions to Air Navigation or Navigation Aids or Facilities.

25.     In addition, Defendant specifically adopted applicable Federal Aviation Regulations as the standard of care by which it operates and maintains its airfields, including the Upper Loon Creek Airport.  This intent is set forth in sections 7735.21 and 7735.22 of its Forest Service Manual FSM 7700 – Travel Management, attached as Exhibit B, which states as follows:

7735.21 – Airfield Operations

1.     Operate all airfields in the Forest transportation system in accordance with applicable Federal Aviation Administration (FAA) regulations and State requirements.

2.     Close airfields in the Forest transportation system when a hazard to aircraft exists, unless the hazard is corrected immediately.

7735.22 – Airfield Maintenance

1.     Maintain safety features at airfields in the Forest transportation system in operating condition.

2.     Develop minimum maintenance standards for airfields in the Forest transportation system and maintain them to at least those standards.

(*See* FSM 7735.21 and 7735.22).

26.     From the time that Defendant included the Upper Loon Creek Airport in its transportation system in 1965, it was aware that the trees located where the subject crash occurred, including the subject hazard, were hazards to air navigation. (See Exhibit C hereto at SHO 3276-SHO 3277, SHO 3280). In the periodic inspection reports for the next 46 years regarding this airport prepared by the State of Idaho for the benefit of the Defendant, until after the subject crash in 2015 when the obstructing trees were finally removed, the obstructing trees are noted on the

Upper Loon Creek Airport diagrams. (See Exhibit D wherein the obstructing trees are highlighted in yellow on the airport diagrams at SHO 3280, SHO 2417, SHO 2400, SHO 2395, SHO 2388, SHO 2382, SHO 2379, SHO 2376, SHO 2378, SHO 2370, and SHO 2366).

27.     In 1995, thirty years after Defendant included the Upper Loon Creek Airport in its transportation system, a pilot encountered a down draft at the departing end of U72 (Runway 22) of a Runway 04 departure, which is the location of the subject crash, and the aircraft descended into the obstructing trees. (See Exhibit E).  Notwithstanding this accident, these obstructing trees, including the subject hazard, were not cut down.

28.     At some time prior to the subject crash, these same trees, including the subject hazard, were burned in a forest fire, but still the trees were not cut down.  (See Exhibit F).  It was not until after the subject crash on April 10, 2015, where four people lost their lives, that Defendant finally removed these obstructions, including the subject hazard.  (See Exhibit G at SHO 2359-2360; note the obstructing trees are no longer denoted on the airport diagram).

29.     Sections 77.19(d) and (e) of 14 CFR Part 77 were prescribed by the Federal Aviation Administrator pursuant to 49 U.S.C. § 44701 (a)(5) which provides in pertinent part as follows: "(a) Promoting Safety. – The Administrator of the Federal Aviation Administration shall promote safe flight of civil aircraft in air commerce by prescribing . . . (5) regulations and minimum standards for other practices, methods, and procedure the Administrator finds necessary for safety in air commerce and national security."

30.     14 CFR Part 77, titled "14 CFR Part 77 - Safe, Efficient Use, and Preservation of the Navigable Airspace", at 14 CFR § 77.1(b), "establishes . . . . (b) The standards used to determine obstructions to air navigation, and navigational and communication facilities; . . . ." 14 CFR § 77.1(b).

31.     The standards used to determine obstructions applicable to Defendant owned and maintained Upper Loon Creek Airport are set forth in 14 CFR § 77.19(d) and § 7 7.19(e) as follows:

§ 77.19 Civil airport imaginary surfaces. The following civil airport imaginary surfaces are established with relation to the airport and to each runway. The size of each such imaginary surface is based on the category of each runway according to the type of approach available or planned for that runway. The slope and dimensions of the approach surface applied to each end of a runway are determined by the most precise approach procedure existing or planned for that runway end. . . .

(d)     Approach surface. A surface longitudinally centered on the extended runway centerline and extending outward and upward from each end of the primary surface. An approach surface is applied to each end of each runway based upon the type of approach available or planned for that runway end.

(1)     The inner edge of the approach surface is the same width as the primary surface and it expands uniformly to a width of:

(i)     1,250 feet for that end of a utility runway with only visual approaches;

(ii)     1,500 feet for that end of a runway other than a utility runway with only visual approaches;

(iii)     2,000 feet for that end of a utility runway with a non-precision instrument approach;

(iv)     3,500 feet for that end of a non-precision instrument runway other than utility, having visibility minimums greater that three-fourths of a statute mile;

(v)     4,000 feet for that end of a non-precision instrument runway, other than utility, having a non-precision instrument approach with visibility minimums as low as three-fourths statute mile; and

(vi)     16,000 feet for precision instrument runways.

(2)     The approach surface extends for a horizontal distance of:

(i)     5,000 feet at a slope of 20 to 1 for all utility and visual runways;

**COMPLAINT FOR DAMAGES UNDER**
**THE FEDERAL TORT CLAIMS ACT - 7**

        (ii)      10,000 feet at a slope of 34 to 1 for all non-precision instrument runways other than utility; and

        (iii)     10,000 feet at a slope of 50 to 1 with an additional 40,000 feet at a slope of 40 to 1 for all precision instrument runways.

    (3)     The outer width of an approach surface to an end of a runway will be that width prescribed in this subsection for the most precise approach existing or planned for that runway end.

(e)    Transitional Surface. These surfaces extend outward and upward at right angles to the runway centerline and the runway centerline extended at a slope of 7 to 1 from the sides of the primary surface and from the sides of the approach surfaces. Transitional surfaces for those portions of the precision approach surface which project through and beyond the limits of the conical surface extend a distance of 5,000 feet measured horizontally from the edge of the approach surface and at right angles to the runway centerline.

32.    The starting width of the approach surface at the approach end of Runway 22 is 250 feet. It extends at a slope of 20:1 for 5000 feet. The end width of the approach surface assigned to this runway is 1,250 feet. (See Exhibit H – U72_RWY22_Apch_Sur_With_Trees attached hereto; the trees that the John H. Short aircraft struck are located amongst the group of trees located at the creek side of the end of the runway as depicted by the white circular objects.)

33.    The trees, including the subject hazard, the subject aircraft struck constituted an obstruction under Part 77.19(d) and Part 77.19(e) because the trees penetrated the approach surface and the transitional surface to Runway 22.

34.    Pursuant to 14 CFR §77.15(b), "Objects that are considered obstruction under the standards described in this subpart are presumed hazards to air navigation unless further aeronautical study concludes that the object is not a hazard." Further, 14 CFR § 77.13(a) states that "natural growth" is applicable to an aeronautical study by the FAA.  No such aeronautical study was ever requested by Defendant or ever undertaken by the FAA. As such, the trees,

**COMPLAINT FOR DAMAGES UNDER**
**THE FEDERAL TORT CLAIMS ACT - 8**

including the subject hazard, the subject aircraft struck are obstructions and a hazard to navigation as defined by the foregoing federal regulations.

35.    Because the trees, including the subject hazard, constitute obstructions, Defendant, as the owner of the land on which the trees are located, was required, in accordance with the common law and its operational policies as set forth above, to either remove the trees or close the airport until the trees were removed.

36.    At all relevant times, the subject hazard was not removed by Defendant; however, Defendant's ownership and control, and feasibility of removal of the subject hazard, are evident in that the subject hazard was quickly removed subsequent to the subject crash and at minimal, if any, cost to Defendant.

37.    Had Defendant removed the subject hazard prior to April 10, 2015, the subject crash, the resulting four fatalities, and the resulting legally cognizable injuries to Plaintiffs would not have occurred.

<u>**COUNT ONE**</u>
**[Negligence – Voluntary Duty]**

38.    Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as follows:

39.    At all times relevant, Defendant voluntarily undertook a legal duty under Idaho law to users of the subject airport, including but not limited to decedent John Short, and by extension to the other occupants thereof, to exercise ordinary care to ensure that the subject airport was reasonably safe for flight operations, including but not limited to takeoffs and landings at the subject airport.

40.    Said voluntarily undertaken duty included a duty to ensure the subject airport was operated and maintained in a reasonably safe manner and in accordance with applicable Federal Aviation Regulations, the standard of care set forth therein, and its policies and procedures.

41.    Defendant breached this duty of care and its own policies and procedures as set forth above and said breach thereof was the sole proximate cause of the subject crash.

42.    As a direct and proximate result of Defendant's tortious conduct as set forth herein, each and every plaintiff suffered separate, distinct, and individual legal injuries, each in an amount to be proven at trial, and each in an amount not less than $75,000.00.

**WHEREFORE,** said Plaintiffs pray for judgment and verdict against Defendant as hereinafter set forth.

<u>COUNT TWO</u>
<u>[Special Relationship - Duty to Exercise Ordinary Care]</u>

43.    In accordance with Idaho law, the Defendant had a special relationship with the users of U72 as such airport is regulated by federal statutes and regulations. *Tomich v. City of Pocatello*, 127 Idaho 394, 397, 901 P.2d 501 (1995).

44.    Messrs. Short, Cheney, Linnell, and Tyson were business invitee users of U72 as they were persons who entered "upon [U72] for a purpose connected with the business conducted on the land, [i.e., the use of U72 as part of the National Airspace System,] or where it can reasonably be said that the visit may confer a business, commercial, monetary or other tangible benefit to the [Defendant]." *Holzheimer v. Johannesen*, 125 Idaho 397, 400, 871 P.2d 814 (1994) (citations omitted).

45.    Defendant, by including U72 in its National Airspace System, invited pilots and aircraft passengers to use U72 for commercial, recreational, emergency, and other uses, which is the reason for its inclusion therein and which is the aviation business conducted at U72. Such

invited use of U72 necessarily confers upon Defendant the business benefit for which U72 exists. That is, the USFS exists in part so that it can own and manage public land for the benefit of the resources on such land and to allow the public to use such land as appropriate, which in this case was to allow the public to use U72 as part of the National Airspace System. Accordingly, Messrs. Short, Cheney, Linnell, and Tyson were business invitee users of U72 under Idaho law.

46.    Because Messrs. Short, Cheney, Linnell, and Tyson were business invitees, Defendant owed them a duty to exercise ordinary care with respect to its invited use of U72.

47.    Said duty of care required that Defendant ensure the subject airport was operated and maintained in a reasonably safe manner in accordance with Idaho law and the standard of care set forth in 14 CFR Part 77.

48.    Defendant breached this duty by failing to remove the obstructing trees, including the subject hazard, and said breach was the sole proximate cause of the subject crash.

49.    As a direct and proximate result of Defendant's tortious conduct as set forth herein, each and every plaintiff suffered separate, distinct, and individual legal injuries, each in an amount to be proven at trial, and each in an amount not less than $75,000.00.

**WHEREFORE,** said Plaintiffs pray for judgment and verdict against Defendant as hereinafter set forth.

## COUNT THREE
### [Gross Negligence & Reckless, Willful, and Wanton Conduct]

50.    Plaintiffs hereby incorporate by reference all previous paragraphs of this Complaint as if fully set forth herein and further allege as to Defendant as follows:

51.    At all times relevant, Defendant had a legal duty to users of the subject airport, including but not limited to decedent, and by extension Plaintiffs, to ensure that the subject airport

was reasonably safe for flight operations, including but not limited to takeoffs and landing to and from the subject airport.

52.     With respect to U72, Defendant had over 49 years of knowledge that the grove of trees into which the subject aircraft crashed, the subject hazard, constituted a hazard to the aviation use thereof.

53.     At all times relevant, Defendant knew that a prior aviation accident occurred when an aircraft struck a tree located in this grove of trees during takeoff.

54.     At all times relevant, Defendant knew that a takeoff pattern near or over these trees was often used by pilots taking off from U72 in order to gain additional altitude over the land below by reaching and flying over the Upper Loon Creek that is adjacent and to the right of U72.

55.     At all times relevant, Defendant knew that the grove of trees had been burned and was no longer comprised of living trees.

56.     At all times relevant, Defendant knew that in the event of an unanticipated wind event or unanticipated loss of engine performance on takeoff or landing that such grove of trees – including the subject hazard – constituted a highly dangerous obstruction to air navigation and that in the event an aircraft were to strike one of these trees the fact of injury to the aircraft and injury or death to the occupants thereof was highly likely, if not a certainty.

57.     At all times relevant and notwithstanding this knowledge, Defendant intentionally, willfully, wantonly, and/or recklessly disregarded the danger caused by the obstructing trees, including the subject hazard, and failed to remove these trees and only removed said trees after the subject crash.

58.     Defendant owed a duty to the users of U72, including Messrs. Short, Cheney, Linnell, and Tyson, to not act in a willful, wanton, careless, and reckless manner with respect thereto.

59.     Defendant breached this duty when it acted in a willful, wanton, careless, and reckless manner by failing to remove the obstructing trees, including the subject hazard, as set forth above thereby breaching the duty of care owed to Messrs. Short, Cheney, Linnell, and Tyson.

60.     As a direct and proximate result of Defendant's willful, wanton, careless, and reckless tortious conduct as set forth herein, each and every plaintiff suffered separate, distinct, and individual legal injuries, each in an amount to be proven at trial, and each in an amount not less than $75,000.00.

**WHEREFORE,** said Plaintiffs pray for judgment and verdict against Defendant as hereinafter set forth.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, and each of them, pray for judgment and verdict against Defendant as follows:

61.     As a result of the tortious conduct of the Defendant, Plaintiff Mary Wilkes Short is entitled, pursuant to I.C. § 5-311, to such damages as under all the circumstances of the case may be just, including, but not necessarily limited to, the reasonable cost of John H. Short's funeral and the reasonable value to Mary Wilkes Short of the loss of John H. Short's services, training, conjugal relationship, and society and the present cash value of any such loss that is reasonably certain to occur in the future, taking into consideration the life expectancy of Mary Wilkes Short, John H. Short's age and normal life expectancy, habits, disposition, and any other circumstances shown by the evidence.  In addition, Mary Wilkes Short is entitled to damages for the loss of financial support

**COMPLAINT FOR DAMAGES UNDER**
**THE FEDERAL TORT CLAIMS ACT - 13**

from John H. Short, and the present cash value of financial support John H. Short would have provided to Mary Wilkes Short in the future, but for the death of John H. Short, taking into account Mary Wilkes Short's life expectancy, John H. Short's age and normal life expectancy, John H. Short's earning capacity, habits, disposition, and any other circumstances shown by the evidence.

62.     As a result of the tortious conduct of the Defendant, Plaintiff Leonard Short is entitled, pursuant to I.C. § 5-311, to such damages as under all the circumstances of the case may be just, including, but not necessarily limited to, the reasonable value to Leonard Short of the loss of John H. Short's services, training, and society and the present cash value of any such loss that is reasonably certain to occur in the future, taking into consideration the life expectancy of Leonard Short, John H. Short's age and normal life expectancy, habits, disposition, and any other circumstances shown by the evidence.  In addition, Leonard Short is entitled to damages for the loss of financial support from John H. Short, and the present cash value of financial support John H. Short would have provided to Leonard Short in the future, but for the death of John H. Short, taking into account Leonard Short's life expectancy, John H. Short's age and normal life expectancy, John H. Short's earning capacity, habits, disposition, and any other circumstances shown by the evidence.

63.     As a result of the tortious conduct of the Defendant, Plaintiff Leslie Weiler is entitled, pursuant to I.C. § 5-311, to such damages as under all the circumstances of the case may be just, including, but not necessarily limited to, the reasonable value to Leslie Weiler of the loss of John H. Short's services, training, and society and the present cash value of any such loss that is reasonably certain to occur in the future, taking into consideration the life expectancy of Leslie Weiler, John H. Short's age and normal life expectancy, habits, disposition, and any other circumstances shown by the evidence. In addition, Leslie Weiler is entitled to damages for the loss

of financial support from John H. Short, and the present cash value of financial support John H. Short would have provided to Leslie Weiler in the future, but for the death of John H. Short, taking into account Leslie Weiler's life expectancy, John H. Short's age and normal life expectancy, John H. Short's earning capacity, habits, disposition, and any other circumstances shown by the evidence.

64.     As a result of the tortious conduct of the Defendant, Plaintiff Levi Wilkes is entitled, pursuant to I.C. § 5-311, to such damages as under all the circumstances of the case may be just, including, but not necessarily limited to, the reasonable value to Levi Wilkes of the loss of John H. Short's services, training, and society and the present cash value of any such loss that is reasonably certain to occur in the future, taking into consideration the life expectancy of Levi Wilkes, John H. Short's age and normal life expectancy, habits, disposition, and any other circumstances shown by the evidence.  In addition, Levi Wilkes is entitled to damages for the loss of financial support from John H. Short, and the present cash value of financial support John H. Short would have provided to Levi Wilkes in the future, but for the death of John H. Short, taking into account Levi Wilkes's life expectancy, John H. Short's age and normal life expectancy, John H. Short's earning capacity, habits, disposition, and any other circumstances shown by the evidence.

65.     As a result of the tortious conduct of the Defendant, Plaintiff Amy Weiloch is entitled, pursuant to I.C. § 5-311, to such damages as under all the circumstances of the case may be just, including, but not necessarily limited to, the reasonable value to Amy Weiloch of the loss of John H. Short's services, training, and society and the present cash value of any such loss that is reasonably certain to occur in the future, taking into consideration the life expectancy of Amy Weiloch, John H. Short's age and normal life expectancy, habits, disposition, and any other

circumstances shown by the evidence.  In addition, Amy Weiloch is entitled to damages for the loss of financial support from John H. Short, and the present cash value of financial support John H. Short would have provided to Amy Weiloch in the future, but for the death of John H. Short, taking into account Amy Weiloch's life expectancy, John H. Short's age and normal life expectancy, John H. Short's earning capacity, habits, disposition, and any other circumstances shown by the evidence.

66.     As a result of the tortious conduct of the Defendant, Plaintiff Megan Wilkes is entitled, pursuant to I.C. § 5-311, to such damages as under all the circumstances of the case may be just, including, but not necessarily limited to, the reasonable value to Megan Wilkes of the loss of John H. Short's services, training, and society and the present cash value of any such loss that is reasonably certain to occur in the future, taking into consideration the life expectancy of Megan Wilkes, John H. Short's age and normal life expectancy, habits, disposition, and any other circumstances shown by the evidence.  In addition, Megan Wilkes is entitled to damages for the loss of financial support from John H. Short, and the present cash value of financial support John H. Short would have provided to Megan Wilkes in the future, but for the death of John H. Short, taking into account Megan Wilkes's life expectancy, John H. Short's age and normal life expectancy, John H. Short's earning capacity, habits, disposition, and any other circumstances shown by the evidence.

67.     As a result of the tortious conduct of the Defendant, Plaintiff Shannon Wilkes is entitled, pursuant to I.C. § 5-311, to such damages as under all the circumstances of the case may be just, including, but not necessarily limited to, the reasonable value to Shannon Wilkes of the loss of John H. Short's services, training, and society and the present cash value of any such loss that is reasonably certain to occur in the future, taking into consideration the life expectancy of

Shannon Wilkes, John H. Short's age and normal life expectancy, habits, disposition, and any other circumstances shown by the evidence.  In addition, Shannon Wilkes is entitled to damages for the loss of financial support from John H. Short, and the present cash value of financial support John H. Short would have provided to Shannon Wilkes in the future, but for the death of John H. Short, taking into account Shannon Wilkes's life expectancy, John H. Short's age and normal life expectancy, John H. Short's earning capacity, habits, disposition, and any other circumstances shown by the evidence.

68.     As a result of the tortious conduct of the Defendant, Plaintiffs Anna Ruth Trentadue and Russell Taylor Cheney's surviving minor children, F.C.C. and J.P.C., are entitled, pursuant to I.C. § 5-311, to such damages as under all the circumstances of the case may be just, including, but not necessarily limited to, the reasonable cost of Russell Taylor Cheney's funeral; the reasonable value thereto of the loss of Russell Taylor Cheney's services, training, conjugal relationship (spouse only), and society, and the present cash value of any such loss that is reasonably certain to occur in the future, taking into consideration the life expectancy of these heirs, Russell Taylor Cheney's age and normal life expectancy, habits, disposition, and any other circumstances shown by the evidence.  In addition, said heirs are entitled to damages for the loss of financial support from Russell Taylor Cheney, and the present cash value of financial support Russell Taylor Cheney would have provided to these heirs in the future, but for the decedent's death, taking into account these heirs' life expectancy, Russell Taylor Cheney's age and normal life expectancy, Russell Taylor Cheney's earning capacity, habits, disposition, and any other circumstances shown by the evidence.

69.     As a result of the tortious conduct of the Defendant, Plaintiff Erica D. Linnell is entitled, pursuant to I.C. § 5-311, to such damages as under all the circumstances of the case may

**COMPLAINT FOR DAMAGES UNDER**
**THE FEDERAL TORT CLAIMS ACT - 17**

be just, including, but not necessarily limited to, the reasonable cost of Aaron J. Linnell's funeral; and the reasonable value to Erica D. Linnell of the loss of Aaron J. Linnell's services, training, conjugal relationship, and society and the present cash value of any such loss that is reasonably certain to occur in the future, taking into consideration the life expectancy of Erica D. Linnell, Aaron J. Linnell's age and normal life expectancy, habits, disposition, and any other circumstances shown by the evidence.  In addition, Erica D. Linnell is entitled to damages for the loss of financial support from Aaron J. Linnell, and the present cash value of financial support Aaron J. Linnell would have provided to Erica D. Linnell in the future, but for the death of Aaron J. Linnell, taking into account Erica D. Linnell's life expectancy, Aaron J. Linnell's age and normal life expectancy, Aaron J. Linnell's earning capacity, habits, disposition, and any other circumstances shown by the evidence.

70.      As a result of the tortious conduct of the Defendant, Plaintiff Arthur Thomas Linnell is entitled, pursuant to I.C. § 5-311, to such damages as under all the circumstances of the case may be just, including, but not necessarily limited to, the reasonable cost of Aaron J. Linnell's funeral; and the reasonable value to Erica D. Linnell of the loss of Aaron J. Linnell's services, training, and society and the present cash value of any such loss that is reasonably certain to occur in the future, taking into consideration the life expectancy of Arthur Thomas Linnell, Aaron J. Linnell's age and normal life expectancy, habits, disposition, and any other circumstances shown by the evidence.  In addition, Arthur Thomas Linnell is entitled to damages for the loss of financial support from Aaron J. Linnell, and the present cash value of financial support Aaron J. Linnell would have provided to Arthur Thomas Linnell in the future, but for the death of Aaron J. Linnell, taking into account Arthur Thomas Linnell's life expectancy, Aaron J. Linnell's age and normal

life expectancy, Aaron J. Linnell's earning capacity, habits, disposition, and any other circumstances shown by the evidence.

71.     As a result of the tortious conduct of the Defendant, Plaintiff Sheri Lynne Linnell is entitled, pursuant to I.C. § 5-311, to such damages as under all the circumstances of the case may be just, including, but not necessarily limited to, the reasonable cost of Aaron J. Linnell's funeral; and the reasonable value to Sheri Lynne Linnell of the loss of Aaron J. Linnell's services, training, and society and the present cash value of any such loss that is reasonably certain to occur in the future, taking into consideration the life expectancy of Sheri Lynne Linnell, Aaron J. Linnell's age and normal life expectancy, habits, disposition, and any other circumstances shown by the evidence.  In addition, Sheri Lynne Linnell is entitled to damages for the loss of financial support from Aaron J. Linnell, and the present cash value of financial support Aaron J. Linnell would have provided to Sheri Lynne Linnell in the future, but for the death of Aaron J. Linnell, taking into account Sheri Lynne Linnell's life expectancy, Aaron J. Linnell's age and normal life expectancy, Aaron J. Linnell's earning capacity, habits, disposition, and any other circumstances shown by the evidence.

72.     As a result of the tortious conduct of the Defendant, Plaintiff Molly Tyson is entitled, pursuant to I.C. § 5-311, to such damages as under all the circumstances of the case may be just, including, but not necessarily limited to, the reasonable cost of Andrew David Tyson's funeral; and the reasonable value to Molly Tyson of the loss of Andrew David Tyson's services, training, conjugal relationship, and society and the present cash value of any such loss that is reasonably certain to occur in the future, taking into consideration the life expectancy of Molly Tyson, Andrew David Tyson's age and normal life expectancy, habits, disposition, and any other circumstances shown by the evidence.  In addition, Molly Tyson is entitled to damages for the loss

**COMPLAINT FOR DAMAGES UNDER**
**THE FEDERAL TORT CLAIMS ACT - 19**

of financial support from Andrew David Tyson, and the present cash value of financial support Andrew David Tyson would have provided to Molly Tyson in the future, but for the death of Andrew David Tyson, taking into account Molly Tyson's life expectancy, Andrew David Tyson's age and normal life expectancy, Andrew David Tyson's earning capacity, habits, disposition, and any other circumstances shown by the evidence.

73.     Allowable costs and attorneys' fees incurred by Plaintiffs in bringing this action; and

74.     For such other and further relief as the Court may deem just and proper.

RESPECTFULLY SUBMITTED this 14th day of February, 2018.

/s/ Mark S. Northcraft
/s/ Aaron D. Bigby
Mark S. Northcraft, ISBN 9892
Aaron D. Bigby, ISBN 10172
Northcraft, Bigby & Biggs, P.C.
819 Virginia Street, Suite C-2
Seattle, WA  98101
Telephone:  (206) 623-0229
Facsimile:  (206) 623-0234
Emails:  marks_northcraft@northcraft.com
              aaron_bigby@northcraft.com
Attorneys for Plaintiffs